7949

## HARMON v. HARMON.

1. TRANSACTION WITH DECEDENTS.—One claiming title to land from another source than his brother in whom was at one time the legal title is not prohibited by section 400 of the Code from testifying as to transactions between himself and his father in suit by the heirs of the brother claiming the land through him.

2. TRUST.—When a father buys a tract of land with the money belonging to one son and has the land conveyed to a minor son, a constructive trust arises in favor of the son owning the purchase fund in the land.

3. ESTOPPEL.—Where such land is sold for taxes against the son holding the legal title and the son having the beneficial interest buys the dower interest of the wife of his brother in order to have an interest entitling him to redeem, he is not thereby estopped from asserting his title against his brother's heirs.

4. IBID.—FRAUD.—Nor is the son holding the beneficial interest estopped from setting up his title by reason of the deed being made to the younger son to defraud the creditors of the father as the creditors had no claim to land impressed with a constructive trust.

Before GAGE, J., Berkeley, May, 1910.   Affirmed.

Action by D'Orrielle Harmon against Angel Harmon *et al.* Plaintiff and defendants, Angel Harmon and Marie Harmon, appeal.

*Messrs. Octavius Cohen* and *Ficken, Hughes & Ficken,* for appellants.

*Mr. Lewis G. Fultz,* contra, cites: *Evidence not obnoxious to section 400:* 47 S. C. 488; 53 S. C. 18; 52 S. C. 371; 58 S. C. 469; 57 S. C. 472; 56 S. C. 385. *As to admissions of a party:* 11 Mo. 3; 1 Enc. of Ev. 596; 1 Ency. 714. *Resulting trust:* Speer's Eq. 20; 1 Strob. Eq. 103, 96; 4 Des. 491; 16 S. C. 256; 23 S. C. 251; 47 S. C. 126; 59 S. C. 203, 457.

July 7, 1911. The opinion of the Court was delivered by

MR. JUSTICE HYDRICK. This is an action for partition. The complaint alleges that William H. Harmon died, intestate, seized in fee of the land therein described, the same having been conveyed to him by James W. Brownlee by deeds, dated 14th June, 1855, and 25th May, 1861; that his widow, Margaret, and his children, the plaintiff and the defendants, Angel and Marie, are his only heirs; that his widow conveyed her dower in said land to the defendant, Duncan A. Harmon, who is therefore made a party. The defendant, Duncan, admits the allegations of the complaint, except that William was seized of the land in his own right, and claims to be the sole owner thereof, alleging that Enoch, the father of himself and William, purchased the land from Brownlee and paid for it with funds belonging to him, but had the titles made in the name of William, then an infant about eleven years old; that thereby a trust arose in his favor; that he has paid the taxes thereon and all expenses connected therewith, and has been in exclusive possession thereof for more than twenty years, claiming the same as owner thereof; that, during the life of William, the land was forfeited to the State for nonpayment of taxes, and it had not been redeemed up to the time of his death, but, after the death of William, desiring to redeem the land, he was required by the commissioners of the sinking fund to produce some written evidence of being the owner of an interest therein, and, for that reason, he obtained a conveyance from Margaret of her dower therein; and thereupon he was allowed to and did redeem it.

The master found the facts to be substantially as alleged by Duncan, and, further, that when Duncan redeemed the land, in 1889, he returned it for taxes in his own name and has ever since paid taxes on it; that he has been in possession of it for about fifty years,—ever since it was purchased from Brownlee. It appears from the testimony that

Enoch and his two sons lived on the land, until the death of Enoch, and that, after the death of Enoch, the two sons lived on the land, until a few years after William's marriage, when he moved off to educate his children, leaving Duncan in possession. The master held that, by accepting the deed from Margaret conveying to him her dower therein, Duncan thereby acknowledged that the land belonged to William in his own right, and he was therefore estopped from claiming that William held the title merely as trustee for him; for, in that case, his widow would have had no dower in the land. The master further found that Enoch had the title put in the name of William, then an infant eleven years of age, to shield the land from his creditors and to prevent Duncan from interfering with his possession thereof; and held that Duncan, having acquiesced in the fraud perpetrated on his father's creditors for more than fifty years, is now estopped from setting up any claim to the land.

Upon exceptions to the master's report, the Circuit Court sustained all his findings of fact, but reversed his conclusion that Duncan was estopped from claiming the land by his acceptance of the deed of Margaret to her dower therein and by acquiescing in the alleged fraud upon his father's creditors, and dismissed the complaint, holding that, the trust having been established, Duncan was the sole owner of the land.

The exceptions assign error: 1. In not holding that the testimony of Duncan Harmon as to transactions and communications between himself and his father, Enoch Harmon, then deceased, was obnoxious to section 400 of the Code of Procedure, and should, therefore, have been excluded. 2. In holding that the evidence established a trust in favor of Duncan. 3. In not holding that Duncan was estopped from claiming the land by accepting the deed of William's widow to her dower right therein, thereby admitting the beneficial title to have been in William and also by

his long acquiescence in the alleged fraud on his father's creditors.

The testimony of Duncan as to the transactions between himself and his father was not obnoxious to section 400 of the Code, because it was not against a party prosecuting or defending the action in any character mentioned in that section. The plaintiff and other children of William claimed the land as his heirs, and not as heirs of Enoch. If they had been prosecuting the action as heirs of Enoch, then the testimony of Duncan as to any transactions between himself and Enoch would have been obnoxious to that section. *Norris* v. *Clinkscales,* 47 S. C. 488, 25 S. E. 797.

We agree with the Circuit Judge in holding that the evidence was sufficient to establish a constructive trust in favor of Duncan. "A constructive trust arises whenever another's property has been wrongfully appropriated and converted into a different form. If one person, having money or any kind of property belonging to another in his hands, wrongfully uses it for the purchase of lands, taking the title in his own name; or if a trustee or other fiduciary person wrongfully converts the trust fund into a different species of property, taking to himself the title; or if an agent or bailee wrongfully disposes of his principal's securities, and with the proceeds purchases other securities in his own name,—in these and all similar cases equity impresses a constructive trust upon the new form or species of property, not only while it is in the hands of the original wrongdoer, but as long as it can be followed and identified in whosesoever hands it may come, except into those of a *bona fide* purchaser for value and without notice; and the Court will enforce the constructive trust for the benefit of the beneficial owner or original *cestui que trust* who has thus been defrauded. * * * It is not essential for the application of this doctrine that

an actual trust or fiduciary relation should exist between the original wrongdoer and the beneficial owner. Wherever one person has wrongfully taken the property of another, and converted it into a new form, or transferred it, the trust arises and follows the property or its proceeds." 3 Pom. Eq. Jur. (3 ed.), sec. 1051. See, also, sec. 1049, where it is said the doctrine applies to the cases of persons "purchasing property with money belonging to the separate estate of their wives, parents, and children, and all persons who stand in fiduciary relation towards each other."

The doctrine of estoppel has no application to this case, as it does not appear that the rights of William, or of those claiming under him, have been adversely affected by the conduct of Duncan in accepting the deed from Margaret for her dower in the land. Estoppel by conduct rests upon the principle that the conduct of the party estopped has misled another to his prejudice. The fact that he accepted the deed was competent as evidence of an implied admission on his part that the beneficial title was in William, but he satisfactorily explained his reasons for accepting the deed, and thereby removed the force of the admission.

As to his acquiescence in the alleged fraud perpetrated by his father upon his creditors, we agree with the Circuit Judge. In the first place, there was no fraud upon Enoch's creditors. They had no right to nor interest in money in Enoch's hands which belonged to Duncan, who owed them no legal duty. They could not have reached the land, if the title had been put in Enoch's instead of William's name, because it was impressed, in equity, with a trust in favor of Duncan, whose money paid for it, and whose equity, so far as the evidence shows, was superior to theirs. The acquiescence of Duncan in allowing the title to remain in William after

his father had it so made was natural under the circumstances, and is explained by the relations of the parties.

Affirmed.

*This case was in some way overlooked by me and my attention was kindly called to its omission by Mr. Fultz.—* REPORTER.